Exhibit 2

| | |
|---|---|
| District Court, Jefferson County, Colorado<br>100 Jefferson County Parkway<br>Golden, Colorado 80401<br>Telephone: (720) 772-2500 | DATE FILED: March 4, 2022 10:39 PM<br>FILING ID: 36903D29A0012<br>CASE NUMBER: 2022CV30250 |
| **TRACIE KUTZKE**<br><br>    Plaintiff,<br><br>**v.**<br><br>**DHILLON HOTEL LLC d/b/a MOTEL 6 LAKEWOOD**, a Colorado limited liability company and<br>**C P JAFAY, LLC**, a Colorado limited liability company<br><br>    Defendants. | ▲ Court Use Only ▲ |
| Matthew M. Holycross, Reg. No. 40463<br>SPRINGER & STEINBERG, P.C.<br>1600 Broadway, Suite 1200<br>Denver, Colorado 80202<br>Telephone: (303) 861-2800; Facsimile: (303) 832-7116<br>E-mail: mholycross@springersteinberg.com<br>*Counsel for Plaintiff* | Case Number:<br><br>Division: |
| **COMPLAINT FOR DAMAGES AND JURY DEMAND** ||

Plaintiff, Tracie Kutzke, by and through her counsel of record, the law firm of Springer and Steinberg, P.C., for her Complaint for Damages and Jury Demand against Defendants Dhillon Hotel LLC d/b/a Motel 6 Lakewood and C P Jafay, LLC, states and alleges as follows:

## I.   PARTIES

1. Plaintiff Tracie Kutzke is a natural person and is a resident and citizen of the State of Wisconsin.

2. Defendant Dhillon Hotel LLC d/b/a Motel 6 Lakewood ("Motel 6") is a Colorado limited liability company licensed and organized under the laws of the state of Colorado.

3. Motel 6 is authorized to do business and was doing business in the state of Colorado at all relevant times herein.

Exhibit 2

4. Motel 6's principal office, at all relevant times herein, was located at 480 Wadsworth Blvd., Lakewood, Colorado 80226.

5. Motel 6's registered agent is Registered Agents Inc, located at 1942 Broadway Street, STE 314C, Boulder, Colorado 80302.

6. Upon information and belief, Motel 6 is in good standing.

7. Defendant C P Jafay, LLC ("CPJ") is a Colorado limited liability company licensed and organized under the laws of the state of Colorado.

8. CPJ is authorized to do business and was doing business in the state of Colorado at all relevant times herein.

9. CPJ's principal office is located at 1660 Lincoln Street, Suite 1420, Denver, Colorado 80264.

10. CPJ's registered agent is Charles A. Miller, located at 1660 Lincoln Street, Suite 1420, Denver, Colorado 80264.

11. Upon information and belief, CPJ is in good standing.

## II.   Jurisdiction and Venue

12. The District Court has subject matter jurisdiction over the allegations in this Complaint as a court of general jurisdiction, pursuant to Section 13-1-124, C.R.S.

13. A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

14. The District Court has personal jurisdiction over the parties to this action because Defendants were authorized to and did in fact conduct business in Colorado, and because the incident giving rise to the allegations in this Complaint occurred in Colorado.

15. Venue in Jefferson County, State of Colorado is proper pursuant to C.R.C.P. 98 because at least one Defendant (Motel 6) is domiciled in and the incident giving rise to the allegations occurred in Jefferson County.

## III.   General Allegations

16. Plaintiff incorporates by reference all of the preceding allegations as if fully set forth herein.

17. As of March 2020, Plaintiff resided in Wisconsin.

Exhibit 2

18.     In or about early March 2020, and in any event, prior to March 4, 2020, Plaintiff traveled to Colorado from Wisconsin to assist her then boyfriend in retrieving his vehicle.

19.     Because Plaintiff and her then boyfriend would be in Colorado for a number of days, Plaintiff needed to find lodging.

20.     Prior to March 4, 2020, Plaintiff booked a room at the Motel 6 Lakewood, located at 480 Wadsworth Boulevard, Lakewood, Colorado 80226 (the "Motel").

21.     Upon information and belief, the Motel was owned, operated, maintained, and secured by Motel 6 or agents and/or employees of Motel 6.

22.     Upon information and belief, CPJ owned and/or controlled the real property on which the Motel was located.

23.     Upon information and belief, CPJ rented or leased the real property on which the Motel was located to Motel 6.

24.     Upon information and belief, both Motel 6 and CPJ were reasonable for the condition of or activities conducted at the Motel, including providing security personnel and security measures to protect the patrons and guests at the Motel, including Plaintiff.

25.     The Motel is a two-story, L-shaped hotel with guest rooms on both sides of each "wing" of the L-shape.

26.     The Motel's rooms are directly accessible from the outside, and the doors entering the rooms are partially covered by an overhand on each story.

27.     A central parking lot occupies the space between the interior "wings" of the L-shape of the Motel, and parking spaces occupy the exterior "wings" of the L-shape.

28.     Upon checking in at the Motel's office, Plaintiff was assigned Room #240 (the "Room").

29.     The Room was located on the second floor of the Motel and faced the central parking lot between the interior "wings" of the L-shape.

30.     The Room was accessible from the communal balcony of the second story by entering a single door that, upon information and belief, was accessible by a programmable keycard.

31.     Next to the single door of the Room, there was a single sliding window next to the Room's door.

Exhibit 2

32.     Upon information and belief, the window to the Room was able to fully open, and was not equipped with a stopper to prevent the window from fully opening.

33.     Upon information and belief, the window to the Room did not have any other security features to protect guests and patrons of the Room from intruders entering the room through the window.

34.     Upon information and belief, the door to the Room did not shut automatically.

35.     Upon information and belief, the door to the Room could remain open on its own if not completely shut by an individual.

36.     Upon information and belief, the Motel did not have cameras that captured the door or window to the Room; although there were cameras capturing other parts of the Motel.

37.     Upon information and belief, the Motel did not employ or utilize security personnel on a consistent basis.

38.     Upon information and belief, the Motel's front desk was protected by glass with a narrow and shallow opening to pass documents and money through.

39.     Upon information and belief, the glass protecting the front desk was installed to protect Motel staff from dangerous individuals.

40.     Upon information and belief, the front desk was also protected by video cameras capturing the front desk area and the lobby area beyond the protective glass at the front desk.

41.     Plaintiff and her then boyfriend spent the night at the Motel and in the Room on March 3, 2020.

42.     Upon information and belief, Plaintiff had the Room reserved until at least March 5, 2020.

43.     Plaintiff was staying in the Room by herself on the evening of March 4, 2020.

44.     Upon information and belief, at some point during the evening of March 4, 2020, or the early morning of March 5, 2020, an uninvited person gained entry to the Room without Plaintiff's permission or knowledge.

45.     Upon information and belief, the uninvited person gained entry to the Room through an open and/or unlocked window, an open or broken door, or potentially from accessing the Room from an adjacent guest room and moving from the adjacent room to Plaintiff's Room.

Exhibit 2

46. After the uninvited person gained entry to the Room, the person brutally raped, beat, and assaulted Plaintiff (the "Incident").

47. After being raped, beaten and assaulted, Plaintiff was left to lay on the floor of the Room, unconscious, in her own blood.

48. After the uninvited person brutally raped, beat, and assaulted Plaintiff, the person left the Room.

49. Upon information and belief, at 11:50 a.m. on March 5, 2020, Motel staff contacted the Lakewood Police Department ("Lakewood PD") complaining of a suspected intoxicated person in the Room.

50. Upon information and belief, Lakewood PD went to the Motel to investigate the suspected intoxicated person and could hear Plaintiff asking for help from the inside of the Room.

51. Upon information and belief, Lakewood PD entered the Room and found Plaintiff laying on the floor, beaten, bloody, and in clear distress.

52. Because of Defendants' insufficient and unreasonable security measures, Plaintiff was raped, beaten, and assaulted while inside the Room on March 4, 2020 or March 5, 2020.

53. Plaintiff was seriously injured from the brutal assault she suffered while inside the Room on March 4, 2020 or March 5, 2020.

54. Defendants knew or should have known that the Motel's location and the customers, patrons, guests, and uninvited public members that it attracted necessitated a security plan that ensured the safety of guests staying at the Motel, particularly while the guests were inside the rooms of the Motel.

55. Defendants knew or should have known that violent crimes occurred on or about the Motel consistently before the Incident.

56. Defendants knew or should have known that the Motel lacked proper security personnel and security measures considering the proclivity for violent crimes to occur on or about the Motel consistently before the Incident.

57. Defendants knew or should have known that their improper security personnel and security measures at the Motel created an unreasonable risk of harm and danger to its patrons and guests, including Plaintiff.

58. Armed with the direct or constructive knowledge of the unreasonable risk of harm and danger to its patrons and guests resulting from their improper security personnel and security measures at the Motel, Defendants did nothing to ensure the safety of its patrons and guests, including Plaintiff.

Exhibit 2

59. Defendants failed to use reasonable care to protect against the dangerous conditions existing at the Motel by having inadequate security.

60. Motel 6 failed to use reasonable care to protect against the dangerous conditions existing at the Motel by not properly hiring, training, or supervising its employees and agents to, among other things, ensure that patrons and guests of the Motel, or other uninvited public members at or near the Motel, did not engage in dangerous activities that carried a substantial risk of danger and harm to other Motel guests or patrons.

61. Defendants failed to use reasonable care to discourage violence or violent activity at or near the Motel.

62. Defendants' failure to use reasonable care to protect against the dangerous conditions existing at the Motel was a cause of Plaintiff's injuries, damages, and losses.

63. Upon information and belief, Lakewood PD received more than 890 record hits related to the Motel between March 4, 2019 and March 5, 2020, including incidents related to extra patrol requests, suspicious vehicles, unwanted parties, recovered stolen vehicles, domestic disturbances, theft, welfare checks, burglary, harassment, intoxicated persons, traumatic injuries, drug related incidents, menacing, assault and sexual assault, unidentified 911 calls, robbery, overdose and poisoning, and shots heard.

64. Upon information and belief, between March 4, 2019 and March 5, 2020, Lakewood PD responded to more than four calls related to the Motel concerning sexual assault.

65. Upon information and belief, the Motel received reviews from patrons and guests complaining of or stating the following, without limitation:

   a. Excessive drug activity;

   b. Being woken up at 1:00 a.m. to screams and police activity;

   c. "I would not bring a family here, nor would I feel comfortable ever recommending this to my sister if she were to stay alone";

   d. "Police vehicles were in the parking lot at the office two times during the week that I stayed":

   e. "The top lock did not work and there were homeless scattered in the parking lot";

   f. "The dead bolt did not work";

   g. "So the same day we were checking in there were about 5 or 6 junkies right on the same end of the motel where our room was. They had 3 dogs just running loose thru the property";

Exhibit 2

h. "Thru the rest of the stay there was yelling in the room next to us all night";

i. "So the next day we had some crack head crawling thru the ceiling breaking into everyone's rooms. They had to have the police come and search thru everyone's rooms to try to find whoever it was";

j. "I hear all these noises sliding screeching sounds and there's always a motor sound that goes with it to obviously a endoscope";

k. "Once it got dark, the parking lot was full of people (not guests), police were present. Not good. Additionally, there was a crime scene clean up van on premise";

l. "Apparently you have no security at night and I was afraid to say anything to this group";

m. "I would suggest security all night in this location, at the very least. I did not fell (sic) safe and had my grandchildren with me and was not going to cause any harm with them in my custody for the night";

n. "I also don't think the desk person should leave his post or possibly be harmed by possible bad guests";

o. "Some guy tried to break into my room around midnight. It appears he had been watching me. I did not feel safe at all however I remained calm and waited until morning to change rooms for my safety. When the next day arrived I explained the situation to Karen Luca the manager and instead of helping me she goes off on me yelling at me saying it isn't her problem";

p. "Around midnight someone tried to come into my room they tried to rent my room to someone else";

q. "Grabbed a bit (sic) to eat came back with cops on premise. Guns drawn";

r. "There was not a working lock on the door in 208…also, the area is not safe";

s. "Interior security latch was broken";

t. "Police are always here for something it appears";

u. "Could not stay a full night, did not feel safe, saw a fight/argument between other guests"; and

v. "This place needs 24/7 security plus multiple random visit from local police throughout the night".

7

Exhibit 2

66. Upon information and belief, when one guest complained that the room was not safe because the lock did not work, Motel staff told her "It's fine, it still works".

67. Upon information and belief, a 22-year-old woman was strangled to death in the Motel in 2018; her body was found in the bathroom of one of the rooms by the cleaning staff.

68. Plaintiff did not contribute in any way to being raped, beaten, and assaulted while within the Room at the Motel on March 4, 2020 or March 5, 2020.

69. Plaintiff did not contribute in any way to her injuries and damages.

70. Plaintiff acted reasonably under the circumstances.

## IV.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Premises Liability Claim against Defendants)

71. Plaintiff hereby incorporates all of the preceding allegations as if fully set forth herein.

72. On March 4-5, 2020, Plaintiff was a patron and guest of the Motel.

73. Plaintiff was therefore an invitee as defined by C.R.S. §13-21-115(5)(a).

74. At all times relevant herein, Defendants were legally responsible for the activities conducted or circumstances existing at the Motel.

75. At all times relevant herein, and specifically on March 4-5, 2020, Defendants were "landowners" of the Motel, as defined by C.R.S. §13-21-115(1).

76. Under C.R.S §13-21-115(3)(c)(1), Defendants owed Plaintiff, an invitee, a duty to use reasonable care to protect her from dangerous conditions about which the landowners knew or should have known.

77. Defendants knew or should have known that the Motel had a proclivity for , crime, violence, and violent activity occurring on or about its premises.

78. Defendants knew or should have known that the Motel had a proclivity for violence against women occurring on or about its premises.

79. Defendants knew or should have known that the Motel lacked proper security personnel and security measures considering the proclivity of patrons, guests, and uninvited public members to engage in crime, violence, and violent activity while at the Motel.

Exhibit 2

80. Defendants knew or should have known that its improper and lacking presence of security personnel and security measures at the Hotel would allow guests, patrons, and uninvited public members to engage in crime, violence, and violent activity while at the Motel.

81. Defendants knew or should have known that its improper and lacking presence of security personnel and security measures at the Hotel created an unreasonable risk of harm and danger to its patrons and guests, including Plaintiff.

82. Specifically, Defendants knew or should have known that its improper and lacking presence of security personnel and security measures at the Hotel could allow patrons, guests, and uninvited public members to break into rooms at the Motel and rape, beat, and/or assault women at the Motel.

83. Defendants should have maintained adequate security to protect its patrons from being harmed by crime, violence, and violent activity perpetrated by guests, patrons, and uninvited public members at the Motel.

84. Defendants should have had proper security measures or procedures in place to prevent patrons, guests, and uninvited public members from engaging in crime, violence, and violent activity at the Motel, including raping, beating, and/or assaulting women at the Motel.

85. Defendants breached their duty owed to Plaintiff by failing to use reasonable care to protect her from dangerous conditions at the Motel of which it knew or should have known, including, without limitation:

   a. Failing to have adequate security personnel at the Motel to monitor and control activity at the Motel;

   b. Failing to have windows in the Motel rooms that were equipped with a mechanism to prevent the windows from fully opening;

   c. Failing to have other security features on the windows in the Motel rooms to protect guests and patrons of the rooms from intruders entering the Motel rooms through the windows;

   d. Failing to equip the Motel rooms with doors that shut automatically to prevent the doors from unintentionally staying open and allowing intruders to enter the rooms uninvited;

   e. Failing to ensure that all locks on all doors worked properly;

   f. Failing to have cameras throughout the Motel that captured all aspects of the Motel, including every room door and room window;

   g. Failing to follow regulations or codes in place intended to promote patron safety; and

Exhibit 2

    h.    Generally failing to discourage and prevent violence and violent activity against patrons, guests, and uninvited public members in and around the Motel.

86.    All of the above listed conditions, alone or in combination with any of the others, created a dangerous condition at the Motel that caused Plaintiff's injuries and damages.

87.    Defendants knew or should have known that the dangerous condition at the Motel existed.

88.    Defendants' failure to use reasonable care to protect Plaintiff from the dangerous conditions at the Motel about which it knew or should have known caused Plaintiff to sustain injuries and damages.

89.    As a direct and proximate result of Defendants' action or inaction, Plaintiff sustained serious bodily injuries, physical impairments, physical disfigurement, pain and suffering, physical disability, loss of enjoyment of life, physical and mental pain and suffering, and emotional distress, in amounts to be determined at the time of trial.

90.    As a direct and proximate result of Defendants' action or inaction, Plaintiff has incurred substantial medical and rehabilitation expenses in the past and will incur medical and rehabilitation expenses in the future, in amounts to be determined at the time of trial.

91.    As a direct and proximate result of Defendants' action or inaction, Plaintiff has sustained a loss of past and future income and earning capacity, in amounts to be determined at the time of trial.

92.    Plaintiff is entitled to recover all of her damages and losses in amounts to be determined at the time of trial.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the date of the October 4-5, 2020 incident, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

## SECOND CLAIM FOR RELIEF
### (Negligence against Defendants – plead in the alternative)

93.    Plaintiff hereby incorporates all of the preceding allegations as if fully set forth herein.

94.    Plaintiff pleads negligence in the alternative, should the Court or jury determine that this is not a case that falls within the Premises Liability Act with respect to one or both Defendants.

Exhibit 2

95. Defendants owed Plaintiff a duty of reasonable care under the circumstances to protect her from other patrons, guests, or uninvited public members that could foreseeably create a danger to her while in or about the Motel.

96. Defendants breached their duty of due care owed to Plaintiff in the following ways:

   a. Failing to have adequate security personnel at the Motel to monitor and control activity at the Motel;

   b. Failing to have windows in the Motel rooms that were equipped with a mechanism to prevent the windows from fully opening;

   c. Failing to have other security features on the windows in the Motel rooms to protect guests and patrons of the rooms from intruders entering the Motel rooms through the windows;

   d. Failing to equip the Motel rooms with doors that shut automatically to prevent the doors from unintentionally staying open and allowing intruders to enter the rooms uninvited;

   e. Failing to ensure that all locks on all doors worked properly;

   f. Failing to have cameras throughout the Motel that captured all aspects of the Motel, including every room door and room window;

   g. Failing to follow regulations or codes in place intended to promote patron safety; and

   h. Generally failing to discourage and prevent violence and violent activity against patrons, guests, and uninvited public members in and around the Motel.

97. Defendants' breach of their duty owed to Plaintiff caused Plaintiff to sustain injuries and damages.

98. As a direct and proximate result of Defendants' action or inaction, Plaintiff sustained serious bodily injuries, physical impairments, physical disfigurement, pain and suffering, physical disability, loss of enjoyment of life, physical and mental pain and suffering, and emotional distress, in amounts to be determined at the time of trial.

99. As a direct and proximate result of Defendants' action or inaction, Plaintiff has incurred substantial medical and rehabilitation expenses in the past and will incur medical and rehabilitation expenses in the future, in amounts to be determined at the time of trial.

100. As a direct and proximate result of Defendants' action or inaction, Plaintiff has sustained a loss of past and future income and earning capacity, in amounts to be determined at the time of trial.

101. Plaintiff is entitled to recover all of her damages and losses in amounts to be determined at the time of trial.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from the date of the March 4-5, 2020 incident, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

### THIRD CLAIM FOR RELIEF
### (Negligent hiring, training, and supervision against Defendant Motel 6)

82. Plaintiff hereby incorporates all of the preceding allegations as if fully set forth herein.

83. Motel 6 hired or employed individuals to assist in cleaning, monitoring, and overseeing the condition of and activity conducted at the Motel, without limitation:

  a. Monitoring the Motel grounds, including the rooms and walkways;

  b. Preventing uninvited public members from congregating within or around the Motel and/or entering Motel rooms;

  c. Ensuring that Motel room windows and doors were closed and locked between and during stays for guests and patrons;

  d. Removing violent or uninvited patrons, guests, or public members from Motel grounds; and

  e. Ensuring that patrons, guests, and uninvited public members who were removed from the Motel do not come back to the Motel without authorization or permission.

84. Motel 6 were responsible for hiring, training, and supervising its employees and agents so that its patrons and guests were not unreasonably exposed to dangerous conditions.

85. Motel 6 owed Plaintiff a duty to hire, train, and supervise its employees and agents working at the Motel.

86. Motel 6 breached its duty owed to Plaintiff to hire, train, and supervise its employees and agents by, without limitation:

Exhibit 2

    a.  Failing to properly train, hire, and supervise its employees, agents, and security staff so that they properly monitored the Motel grounds, including the rooms and walkways;

    b.  Failing to properly train, hire, and supervise its employees, agents, and security staff so that they properly prevented uninvited public members from congregating within or around the Motel and/or entering Motel rooms;

    c.  Failing to properly train, hire, and supervise its employees, agents, and security staff so that they properly ensure that Motel room windows and doors were closed and locked between and during stays for guests and patrons;

    d.  Failing to properly train, hire, and supervise its employees, agents, and security staff so that they properly remove violent or uninvited patrons, guests, or public members from Motel grounds; and

    e.  Failing to properly train, hire, and supervise its employees, agents, and security staff so that they properly ensure that patrons, guests, and uninvited public members who were removed from the Motel do not come back to the Motel without authorization or permission.

87.    Motel 6's breach of its duty owed to Plaintiff to hire, train, and supervise its employees and agents caused Plaintiff to sustain injuries and damages.

88.    As a direct and proximate result of Motel 6's action or inaction, Plaintiff sustained serious bodily injuries, physical impairments, physical disfigurement, pain and suffering, physical disability, loss of enjoyment of life, physical and mental pain and suffering, and emotional distress, in amounts to be determined at the time of trial.

89.    As a direct and proximate result of Motel 6's action or inaction, Plaintiff has incurred substantial medical and rehabilitation expenses in the past and will incur medical and rehabilitation expenses in the future, in amounts to be determined at the time of trial.

90.    As a direct and proximate result of Motel 6's action or inaction, Plaintiff has sustained a loss of past and future income and earning capacity, in amounts to be determined at the time of trial.

91.    Plaintiff is entitled to recover all of her damages and losses in amounts to be determined at the time of trial.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant Motel 6 for general and special damages as proven at trial, pre-judgment interest from the date of the March 4-5, 2020 incident, post-judgment interest as provided for by law, costs, expert witness fees and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper in the premises.

Exhibit 2

## V. JURY DEMAND

Plaintiff hereby demands a trial to a jury of six (6) concerning all issues so triable.

DATED March 4, 2022.

                                                             Respectfully submitted,

                                                             SPRINGER & STEINBERG, P.C.

                                                             */s/ Matthew M. Holycross*
                                                             Matthew Holycross, #40463
                                                            *Plaintiff's counsel*

**Plaintiff's Address**:
W. 5179 Alfalfa Avenue
Medford, Wisconsin 54451